UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE MILLER,

      Plaintiff,

                                    Case No. 15-13976

v.

                                    Hon. John Corbett O'Meara

ROAD COMMISSION FOR
OAKLAND COUNTY,

      Defendant.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      Before the court is Defendant's motion for summary judgment, which has been fully briefed.  The court heard oral argument on December 8, 2016, and took the matter under advisement.  For the reasons explained below, Defendant's motion is granted.

## BACKGROUND FACTS

      Plaintiff Wayne Miller is suing his former employer, the Road Commission for Oakland County ("RCOC").  Plaintiff alleges that Defendant interfered with his right to take leave under the Family and Medical Leave Act ("FMLA") and retaliated against him, resulting in his constructive discharge.

      Plaintiff began working for RCOC in May 2011 as its information systems

supervisor.  Plaintiff was responsible for supervising four employees and reported to David Evancoe, the Director of Planning and Environmental Concerns.  Plaintiff worked in Waterford, Michigan, while Evancoe's office was in Beverly Hills, Michigan.  Plaintiff was required to keep track of his time by entering the hours worked and appropriate pay code (regular, overtime, vacation, FMLA, etc.).

In December 2014, Plaintiff's wife was seriously injured in a car accident. Plaintiff submitted a request for intermittent FMLA leave to care for his wife on December 26, 2014.  Defendant approved Plaintiff's request for leave on February 6, 2015.  Plaintiff testified that Evancoe was supportive of his need to take leave. Pl.'s Dep. at 25, 30.

In early 2015, several problems arose with RCOC's computer system, including a number of "denial of service attacks," viruses, and the crash of its email server.  Pl.'s Dep. at 77-78.  Evancoe testified that it was Plaintiff's responsibility to keep the IT systems running smoothly.  See Evancoe Dep. at 10-11.

In March 2015, Evancoe noticed discrepancies on three of Plaintiff's weekly time sheets.  For example, Plaintiff's time sheet indicated that he had worked forty hours the week of March 2, 2015, but in emails to Evancoe, Plaintiff stated that he was taking one and a half days off that week.  See Def.'s Ex. L.  Plaintiff testified

-2-

that he was "distracted" by behavioral issues with his children at school, his wife's and mother's health issues, and viruses on RCOC's computer system.  Pl.'s Dep. at 31.

On April 4, 2015, Plaintiff emailed Evancoe to say that he forgot that his kids would be off for spring break the next week.  Plaintiff stated that he would come to work the next week, but that he needed to leave by 11 a.m. each day.  He also said that "I have also self-diagnosed myself with severe lack of sleep with the accompanying irrational behavior.  I need to get some rest."  Def.'s Ex. M.

On April 8, 2015, Plaintiff emailed Evancoe: "I am still unable to concentrate.  I will need to take the remainder of the week off.  Will use FMLA if no 'hours' are available.  Thanx!!" Def.'s Ex. K.  Later that day, Evancoe emailed Plaintiff, asking him to meet with Evancoe and Pam Cahill, RCOC's human resources director.  Evancoe wrote: "We are concerned for you and would like to discuss how we can be of assistance and to discuss some resources that might be of benefit to you.  Additionally, we want to discuss your FMLA status and see whether a modification to it would be appropriate to better reflect your current situation." Def.'s Ex. O.

Plaintiff, Evancoe, and Cahill met on April 13, 2015.  At that meeting, Plaintiff was referred to the HelpNet Employee Assistance Program, as a result of

Defendant's concerns about his absenteeism, leaving early, and sleep deprivation. <u>See</u> Def.'s Ex. Q. Cahill also provided Plaintiff with paperwork so that he could seek FMLA leave for his own medical condition. Plaintiff requested FMLA leave for himself on April 21, 2015. After granting Plaintiff extensions to provide medical certification, Defendant approved Plaintiff's FMLA leave on June 30, 2015.

At the April 13 meeting, Cahill went over Plaintiff's time sheets with him, to ensure accurate timekeeping. In addition to his written time sheets, Plaintiff kept track of his time on a spreadsheet on his computer. Cahill and Plaintiff went through every day from January to April 2015 to reconcile the differences between what was submitted on his time sheets and what Plaintiff indicated was reflected on his spreadsheet to ensure the time was coded correctly. If Plaintiff stated he was not at work on a particular day, Cahill asked if the time was taken to care for his wife. If Plaintiff indicated that he had, the time was coded as FMLA, if he said no, the leave was unauthorized. Cahill Dep. at 44. Once Plaintiff's time records were corrected, Defendant paid Plaintiff for 81.75 hours of overtime that had not been previously reported. Def.'s Ex. S. Cahill stressed to Plaintiff the importance of submitting timely and accurate time sheets. <u>Id.</u>

On June 8, 2015, Evancoe placed a memo in Plaintiff's file regarding an

-4-

"oral reminder" that he was given regarding unauthorized absences and his failure to properly report time worked.  Def.'s Ex. U.  The memo indicated that Evancoe discussed various issues with Plaintiff, including that he was to turn in accurate time sheets and seek pre-approval for working remotely and overtime.

On June 10, 2015, Evancoe provided Plaintiff with a copy of his performance review, which was negative.  Evancoe rated Plaintiff as failing to meet expectations, noting that his "[p]erformance has gradually declined since the last performance appraisal. . . . Generally, there have been too many IT crisis, too many user complaints, issues with time keeping, little progress on advance initiatives, a loss of confidence by upper management and the Board and there is now a belief that this employee does not have the capacity to bring us out of crisis and into a more promising and stable IT future."  Def.'s Ex.T.

Evancoe discussed a performance improvement plan with Plaintiff, setting goals for him to accomplish.  See Evancoe Dep. at 7-8.  Plaintiff agreed that Evancoe was reasonable in setting the dates by which he should accomplish his goals.  Pl.'s Dep. at 61.  Evancoe testified that he wanted to set realistic expectations because he wanted Plaintiff to succeed.  Evancoe Dep. at 8.

Sometime in June 2015, Plaintiff discovered an undated document on RCOC's computer system entitled "confidential employee overview," which

indicated that Defendant was considering terminating his employment. (This

document was created by Cahill to share with counsel and Defendant objects to its

use.) On June 30, 2015, Plaintiff resigned from his employment with RCOC,

stating: "My personal issues continue to give me unforseen challenges with regard

to Tara's and my daughter's rehabilitation. Unfortunately I am unable able [sic] to

manage both successfully. I owe it to the people I support to get the job done. I

interpret that as doing my best. In this case I cannot do both and I have chosen to

take care of my family." Def.' Ex. V.

Plaintiff filed this action on November 12, 2015, alleging that Defendant

violated the FMLA by counting FMLA leave days as "unauthorized," interfering

with his right to take leave, and retaliating against him for taking leave. Defendant

seeks summary judgment on Plaintiff's claims.

## LAW AND ANALYSIS

There are two types of claims under the FMLA: an interference claim and a

retaliation claim. Plaintiff alleges both types of claims here. To prevail on a

FMLA interference claim, the employee must show that (1) he was an eligible

employee; (2) the defendant was an employer as defined under the FMLA; (3) he

was entitled to leave under the FMLA; (4) he gave his employer notice of his intent

to take leave; and (5) the employer denied the employee the FMLA benefits to

-6-

which he was entitled.  <u>Edgar v. JAC Prod., Inc.</u>, 443 F.3d 501, 507 (6th Cir. 2006).

Plaintiff argues that he was denied FMLA benefits because Defendant counted some of his FMLA absences as "unauthorized."  Plaintiff admits, however, that in the April 13 meeting with Cahill, *he* identified which absences were result of time off to care for his wife (FMLA qualifying) and which were not.  Pl.'s Dep. at 55-56 ("The revisions were made based on my spreadsheet yes."); <u>see</u> <u>also</u> Cahill Dep. at 44.  Plaintiff has not demonstrated that the days Defendant counted as "unauthorized" were days when (1) Plaintiff cared for his wife and (2) Plaintiff gave Defendant notice of the reason for the absence.  There is no evidence in the record that Defendant denied Plaintiff FMLA leave to which he was entitled.

With respect to his retaliation claim, Plaintiff must show that (1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment action; and (3) there was a causal connection between the exercise of his rights under the FMLA and the adverse employment action.  <u>Edgar</u>, 443 F.3d at 508.  If Plaintiff satisfies the elements of a prima facie case, the burden shifts to Defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action.

Plaintiff contends that he suffered an adverse employment action because he was constructively discharged.  A constructive discharge occurs when the

-7-

employer makes an employee's working conditions so "intolerable that the employee is forced into an involuntary resignation." <u>Laster v. City of Kalamazoo</u>, 746 F.3d 714, 727 (6th Cir. 2014) (citation omitted). "To demonstrate a constructive discharge, Plaintiff must adduce evidence to show that 1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit." <u>Id.</u>

> Whether a reasonable person would have [felt] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

<u>Laster</u>, 746 F.3d at 728 (citation omitted). In addition, "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." <u>Id.</u> (citation omitted).

In this case, there is no evidence that Defendant deliberately created intolerable working conditions for Plaintiff. He did not suffer harassment, a

demotion, onerous reassignment, or a reduction in wages or benefits.  Although

Plaintiff received a poor performance review and was placed on a performance

improvement plan, he was not told that he would be terminated.  Rather, he was

given the opportunity to improve his job performance.  The Sixth Circuit has held

that "criticism in performance reviews and institution of performance improvement

plans, alone, do not constitute objectively intolerable conditions."  Agnew v. BASF

Corp., 286 F.3d 307, 310 (6th Cir. 2002).

Further, although Plaintiff discovered a memo that showed that Defendant

was considering terminating his employment, this information was not

communicated to Plaintiff by Defendant and was apparently not intended for

Plaintiff.  See Laster, 747 F.3d at 728-29 (speculation that the plaintiff would be

fired insufficient to prompt constructive discharge).  Viewing all of the

circumstances, Plaintiff has not demonstrated that he was constructively discharged

or that he otherwise suffered an adverse employment action.  See Agnew, 286 F.3d

at 310 ("An employee who quits a job in apprehension that conditions may

deteriorate later is not constructively discharged.").

## ORDER

IT IS HEREBY ORDERED that Defendant's October 14, 2016 motion for

summary judgment is GRANTED.

s/John Corbett O'Meara
United States District Judge

Date:  December 13, 2016


I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, December 13, 2016, using the ECF system.

s/William Barkholz
Case Manager